# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 21-628


**TIMOTHY BERNARD & SHEMAN BERNARD**

**VERSUS**

**LAFAYETTE CONSOLIDATED GOVERNMENT**

\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. C-20187051
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**CHIEF JUDGE**
\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell and John E. Conery, Judges.

**AFFIRMED.**

**Timothy Bernard and Sheman Bernard, Pro Se**
**1224 Carmel Drive**
**Lafayette, LA  70601**
**(337) 781-0469**
**PRO SE COUNSEL FOR PLAINTIFFS/APPELLANTS:**
     **Timothy and Sheman Bernard**

**Cearley W. Fontenot**
**Lawrence E. Marino**
**Oats & Marino**
**100 East Vermilion Street, Suite 400**
**Lafayette, LA 70501**
**(337) 233-1100**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Lafayette Consolidated Government**

**COOKS, Chief Judge.**

Plaintiffs, Timothy and Sheman Bernard, are the owners of a house at 1224 Carmel Drive in Lafayette, Louisiana. The property was at the intersection of Carmel Dr. and Ovey St. At some point in the past, Defendant, Lafayette Consolidated Government (LCG) installed a twelve-inch water main along the south side of Carmel Drive. Branching off from that water main to the south was a six-inch water line, running along the west side of Ovey St.

On October 7, 2014, the Ovey St. water line experienced a rupture at or near the northeast corner of Plaintiffs' property. LCG turned off the valves at both ends of the Ovey St. line, which terminated the blowout. However, it was uncontested a substantial amount of water was discharged from the pipe. LCG has maintained it would have preferred to remove the pipe entirely. Mr. Bernard over the years objected to LCG entering onto his property for various reasons and filed lawsuits to address his concerns. LCG claims it chose to keep the valves shut and to administratively take the branch line out of service, in order to minimize confrontation with Plaintiffs. This court in a prior lawsuit between Plaintiffs and numerous entities, including LCG, addressed the facts around this incident:

> A work crew was dispatched to repair the line. The repair work caused a hole on Mr. Bernard's property. Mr. Bernard stated at oral argument that he wanted the hole(s) fixed, but when LUS [Lafayette Utilities Systems] returned to fill the hole, Mr. Bernard and his family protested. At the time, LUS was accompanied by officers of the Lafayette City Police Department (LPD). When several members of the Bernard family actively protested the presence of LPD and LUS and its equipment on their property, Mr. Bernard and his daughter, Bionca Joseph, were ultimately arrested for assault and resisting arrest.
>
> In February of 2015, Mr. Bernard and Bionca filed an action against LPD, LUS and Lafayette City-Parish Consolidated Government (LCG). The defendants responded with dilatory exceptions of vagueness, nonconformity of the petition with pleading requirements, and lack of procedural capacity of the LPD.
>
> In March 2015, before the trial court ruled on the exceptions to the first petition, Mr. Bernard and Bionca filed a second petition, this time alleging fraud and wrongful death. Newly added defendants were

2

Our Lady of Lourdes Regional Medical Center (Lourdes), J. Alfred Mouton Realty (Mouton), the Lafayette Sheriff's Department, and the Department of Health and Hospitals (DHH) Motuon filed an exception of prescription. Lourdes filed peremptory exceptions of no cause of action and no right of action and dilatory exceptions of prematurity and vagueness. DHH filed declinatory exceptions of insufficiency of citation and service of process and dilatory exceptions of vagueness and nonconformity of the petition.

On May 26, 2015, the trial court signed a judgment granting LCG's and LUS's exceptions of vagueness and nonconformity and granted LPD's exception of lack of procedural capacity. The judgment dismissed LPD, and ordered the plaintiffs to amend their pleadings to provide a clear and concise statement of their cause of action against LCG and LUS.

In June 2015, the plaintiffs filed a third and amending petition adding claims for breach of contract and tortious inducement for breach of contract. This petition named twelve new defendants, all individual employees of LUS, LPD, Lourdes, DHH, Mouton, the Lafayette tax assessor, and a Lafayette attorney. It is unclear whether this petition was served, as there appears to be no certificate of service or any form of service information page. This petition does not clarify previous claims but adds new and inappropriate law pertaining to usufruct, naked ownership rights, and contract law.

A hearing was conducted on July 13, 2015, on the exceptions previously filed by DHH, Lourdes, and Mouton, based upon the first two petitions. The trial court granted Mouton's exception of prescription and dismissed the real estate defendant with prejudice on July 17, 2015.

In a judgment dated August 4, 2015, the trial court granted DHH's peremptory exception of no right of action as to all claims of Bionca, which DHH had asserted orally in open court at the July 13 hearing. The August 4 judgment also granted DHH's exceptions of insufficiency of service of citation and service of process and ordered Mr. Bernard to cure the defects within thirty days from the date of the July 13 hearing, or the suit would be dismissed with prejudice at Mr. Bernard's cost. The trial court further granted DHH's exceptions of nonconformity and vagueness and ordered Mr. Bernard to amend his petition by August 13 to more fully state the damages and relief he sought from DHH.

In an August 5, 2015 judgment, the trial court granted Lourdes's peremptory exception of no right of action and dismissed all of Bionca's claims against Lourdes with prejudice. The trial court granted Lourdes's dilatory exception of prematurity for Mr. Bernard's failure to seek the statutorily-required medical panel review before filing suit; thus, the court dismissed Mr. Bernard's medical malpractice claim against Lourdes without prejudice. The judgment also granted Lourdes's peremptory exceptions of no cause of action and dismissed Mr. Bernard's following claims against Lourdes with prejudice: (1)

3

claims for the wrongful issuance of a temporary restraining order; (2) claims in his first pleading; (3) claim regarding his arrest; (4) claims regarding a blow out of the city's infrastructure system; (5) claims for encroachment on property and the illegal selling of land; and (6) claims regarding contamination, libel/slander defamation, fraud, injury to person, and property damages. The judgment further granted Lourdes's exception of vagueness and gave Mr. Bernard until August 13, 2015 to cure his petition's vagueness and amend his pleading to state facts that would support a valid breach of contract claim against Lourdes.

On August 13, 2015, Mr. Bernard filed a re-amended petition for breach of contract, fraud, wrongful death, damages, and tortious inducement for breach of contract. The motion was opposed, but Mr. Bernard was allowed to file it.

In December, 2015, Lourdes reasserted its exception of no cause of action and sought to enforce the judgment previously rendered in its favor. Likewise, LCG and LUS reasserted dilatory exceptions of vagueness and nonconformity of the petition and asked for enforcement of the judgment ordering the removal of LPD as a defendant. Likewise, DHH filed a motion to dismiss for failure to sufficiently serve it with citation and process. Mr. Bernard filed a motion to fix a trial date which was opposed and denied. He then filed a pleading purporting to be a motion for summary judgment on the issues of the trial date and the exceptions.

Following a hearing on January 25, 2016, the trial court rendered judgments in open court in favor of all defendants and denied Mr. Bernard's motion.

On the date of the hearing, finding that Mr. Bernard failed to show proof of citation and service of process on DHH, the court signed a January 25 judgment in favor of DHH on its declinatory exceptions, dismissing DHH *without* prejudice.

At the same hearing, the trial court granted Lourdes's reassertion of its peremptory exception of no cause of action and signed a February 19 judgment dismissing Mr. Bernard's remaining breach of contract claim against Lourdes with prejudice.

Also at the same hearing, the trial court orally granted the reasserted dilatory exceptions of vagueness, nonconformity, and lack of procedural capacity of LPD, brought by LCG and LUS. Prior to the oral argument of this appeal, we granted an unopposed motion to supplement the record with an earlier circulated but previously unsigned judgment memorializing the court's granting of the dilatory exceptions of LCG and LUS. As Mr. Bernard's motion for appeal covers all judgments arising from the January 25, 2016 hearing, we will consider this third judgment an interlocutory judgment without prejudice and now appealable along with the other appealable judgments.

4

*Bernard v. Lafayette City Police Department*, 16-361, pp. 2-6 (La.App. 3 Cir. 11/16/16) (unpublished opinion) (footnotes omitted), *writ denied*, 16-2253 (La. 2/3/17), 215 So.3d 691.

Finding no merit in any of Mr. Bernard's arguments, this court affirmed the trial court's judgment of January 25, 2016, granting DHH's declinatory exceptions of insufficiency of citation and service of process and dismissing DHH without prejudice. It also affirmed the interlocutory judgment in favor of LCG and LUS, granting the dilatory exceptions of vagueness and nonconformity of the petition, and ordering the removal of LPD as a named defendant for lack of procedural capacity without prejudice. This court affirmed the February 19, 2016 judgment which granted the reasserted exceptions of no cause of action, prematurity and vagueness of Lourdes and dismissed Mr. Bernard's claim for breach of contract with prejudice. We noted the difficulty in assessing the facts of the case, as well as the wide latitude that was provided to the pro se plaintiffs by the trial court:

> The facts of this case have been exceedingly difficult to determine. Instead of stating the facts in straight-forward manner, Mr. Bernard, in his written pleadings and his oral testimony attempts to cite language from a myriad of inapplicable statutes such that very few facts are actually given. The few facts given are not clear because they are buried in jargon, with one complaint against one party intersecting with another complaint against a different party in the same sentence. Because he is a pro se plaintiff, Mr. Bernard has been given great latitude by the courts. He fails to perfect appeals dismissing defendants and causes of actions but continues to repeat the same incoherent accusations in each pleading and motion for appeal. In the January 2016 hearing giving rise to this appeal, the trial court dismissed DHH without prejudice, though the court had warned Mr. Bernard that it would dismiss DHH with prejudice if Mr. Bernard failed to cure his defects and properly serve the defendant within the time allowed. Mr. Bernard's response was to call the judge a "crook" in open court. It is one thing to misunderstand the complexities of the law; it is quite another to be abusive to the court which has granted such latitude.

*Id.* at pp. 6-7

On January 25, 2018, according to LCG, its personnel were attempting to resolve a problem with low water pressure at nearby Fred St. The employee

checking the valves noticed a closed valve where the Ovey St. line intersected the Fred St. line. Unaware of the prior rupture in the Ovey St. line, the employee opened it up believing that might increase the water pressure problems in the area.

Approximately twenty to thirty minutes after opening up the valve, the employee was notified of a complaint by Mr. Bernard that his property was flooding. The employee immediately returned to the valve he had opened and shut it. According to the employee he could not see the rupture and release of water because Plaintiffs had built a fence around their property since the 2014 blowout. However, he was able to see water flowing from Plaintiffs' property when he turned the valve off. LCG noted the release of water occurred because the pipe itself had not been removed after the 2014 blowout, but the valve simply turned off. Thus, when water was reintroduced into the pipe it discharged from the previous rupture as it did in 2014.

LCG maintained because of past confrontations with Plaintiffs, it did not perform any remedial actions on the Ovey St. branch line. This time, LCG cut the Ovey St. line at its intersection with the Fred St. line, removing a section of pipe and capping it off to prevent any water from entering the Ovey St. line from Fred St.

LCG did not contest that the release of water formed a hole at the location of the blowout on Plaintiffs' property that was approximately two to three feet deep. LCG offered to fill the hole and to seed the property. The Plaintiffs refused to allow LCG employees to come onto their property.

On January 21, 2018, again acting pro se, Plaintiffs filed a "Petition for Expropriation; Place of Filing; Contents; Claims for Damages; Prescription; Libel/Slander and Request for Jury Trial Compensation." The petition named only LUS and LCG as defendants in the proceeding. LCG filed dilatory exceptions of vagueness and nonconformity of the petition. It requested the court issue an order directing Plaintiffs to comply with the requirements of La.Code Civ.P. art. 891 and

6

remedy their petition by providing a clear statement of the claims being asserted against LCG, the facts alleged in support thereof, the alleged fault or negligence of LCG with respect thereto and the alleged damages sought. After a hearing on the matter, the exceptions were granted by the trial court and Plaintiffs were ordered to amend their petition within ten days.

On March 20, 2019, Plaintiffs filed an "Amended Petition for Inverse Condemnation and Request for Jury Trial Compensation." In their petition, Plaintiffs complained the "property has been damaged and the burden placed on this property has placed the owners where we cannot derive any reasonable use from it unless properly repaired and remediate [sic] whats broken." On May 21, 2019, LCG filed an answer to the amended petition, wherein it either denied the allegations set forth in Plaintiff's amended petition or averred that they required no response. LCG also set forth several affirmative defenses, including that Plaintiffs failed to state a claim, cause, or right of action against LCG for which relief can be granted.

On May 28, 2019, Plaintiffs filed a Motion for Default Judgment, despite acknowledging in the motion that LCG had filed an answer to the amended petition. The trial court denied the motion for default judgment on the grounds LCG had properly filed an answer to the petition. Plaintiffs filed a writ with this court, which was denied on October 1, 2019. *Bernard v. Lafayette Consolidated Government*, 19-611 (La.App. 3 Cir. 10/1/19).

In attempting to proceed with discovery, LCG propounded interrogatories to Plaintiffs, requesting they "state the amount of money that you seek to recover from LCG in this lawsuit." Plaintiffs did not comply, asserting they would "need expert advice" to answer that question. However, Plaintiffs listed no expert on their witness and exhibit list prior to trial.

Plaintiffs also requested a jury trial in this matter. LCG filed a motion to strike the jury demand, noting any possible damages due would fall well short of the

$50,000.00 limit for demanding a jury trial. The trial court granted LCG's motion to strike the jury demand, and the matter proceeded to a bench trial. After several continuances requested by Plaintiffs were granted, the matter proceeded to trial on July 6, 2021.

Following trial on the matter, the trial court found Plaintiffs were entitled to have LCG fill in the hole on their property that resulted from the second blowout in 2018. The trial court also ordered LCG to permanently disable the water line with concrete to prevent any possible emissions of water in the future. If it was required to remove Plaintiff's fence to fill the hole, LCG was ordered to restore the fence as found. Lastly, due to the past history of confrontation, Plaintiffs were ordered to not interfere with LCG's requirement to fill the hole. Plaintiffs objected to the trial court's ruling and filed this appeal.

## ANALYSIS

As was noted earlier by this court in the first appeal taken by Plaintiffs, the facts of this case have been exceedingly difficult to determine. Plaintiffs have chosen to represent themselves throughout these proceedings, thus, their difficulty in understanding the complexities of the applicable law is not unexpected and the various courts throughout these proceedings have given great latitude to Plaintiffs. Compounding this problem is the Plaintiffs' insistence on relitigating complaints from the 2014 blowout, which was made final by the prior appeal in this matter.

In their first assignment of error, Plaintiffs argue there was an improper "taking" of their land under La.Const. art. 1, §4. The uncontradicted facts in this matter establish there was no taking or expropriation of Plaintiffs' land. Rather, the blowout, which LCG has not denied was caused by the negligence if its employee, is a tort under the law.

The trial court determined the damages suffered by Plaintiffs, whatever their theory of liability, was the presence of the sinkhole. To remedy the harm the trial

court ordered LCG to fill the hole with dirt and return the property to its prior state prior to the blowouts.[1]

Plaintiffs also argued at trial that the water which flooded their property was sewage. However, Plaintiffs' own petition did not reference any sewerage and stated the released water came from the main water line. Testimony at trial established the only line at the area of the rupture was one for potable water and no sewer line was near the location of the hole. Plaintiffs have not asserted in their appellate brief that the discharged water was sewerage.

Plaintiffs also complain they will suffer distress over the possibility their land could be subject to some future blowout. However, it was undisputed that LCG disconnected the south end of the line and capped it off in the days following the 2018 blowout. The trial court's judgment also mandated that LCG fill the other end with concrete, thus eliminating any possibility of a future blowout.

Plaintiffs in their brief claim pain and suffering. However, no such claim for pain and suffering is set forth in the petition, nor was there any such testimony at trial. Therefore, we cannot say the trial court abused its discretion in failing to make any award of pain and suffering as it was not asserted in the petition or established at trial.

Plaintiffs' second assignment of error is difficult to discern. Their brief states the trial court "erred by just allow dirt and cement to cover a hole and valve." It would appear they are arguing that something else other than dirt was required to fill the sinkhole. We find nothing inappropriate or inadequate in ordering LCG to fill the sinkhole with dirt and fill the pipe with concrete.

Plaintiffs next assignment of error complains that the trial court "erred in not allowing our witnesses to testify during trial." A review of the transcript establishes

---

[1] Plaintiffs also complained the hole widened over time due to periodic rain. No evidence was introduced to support this; however, it is evident Plaintiffs' refusal to allow LCG to access their property to fill the hole is the reason for any continued erosion due to rain.

the trial court did not prevent any witness requested by Plaintiffs from testifying at trial and allowed Plaintiffs great latitude in questioning any witness who did testify.

In their final assignment of error, Plaintiffs appear to repeat the gist of their first assignment of error, protesting that the remedy granted by the trial court was insufficient. For the reasons set forth earlier, we cannot say the trial court abused its discretion in the award rendered.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiffs-Appellants, Timothy and Sheman Bernard.

**AFFIRMED.**